315 So.2d 591

**JACKSON COMPANY, a corporation**

v.

**Gordon F. FAULKNER and Maureen P. Faulkner.**

**Civ. 388.**

Court of Civil Appeals of Alabama.

July 9, 1975.

J. Wm. Thomason, and James R. Shaw, Bessemer, for appellees.

Laurence D. Vinson, Jr., Birmingham, for appellant.

HOLMES, Judge

Appellant-real estate company appeals from a jury verdict and judgment thereon of $5,644 in favor of appellees-purchasers. Appellees' complaint alleged that a lot sold by appellant to appellees "was not suitable for construction of a dwelling house."

The evidence as revealed by the record indicates the following.

Appellee-husband testified that he telephoned Mrs. Catherine Hare Ellis who was working with appellant corporation in February 1972, and told her he was looking for a lot in the Rocky Ridge-Bluff Park area to build a home on. The price range purchaser was interested in was from $2,500 to $4,000. At some point Mrs. Ellis showed appellee the lot he subsequently purchased. On the first showing appellee testified he was unable to walk the lot due to inclement weather. No mention was made at this time of the need for a percolation test or any discussion as to septic tank approval.

On the second trip to the lot taken by the two parties, appellee testified that Mrs. Ellis made the following statement to him. "If you tell anybody I told you this I won't admit it, but be sure and have a percolation test run on the property." Mrs. Ellis denied making the statement to appellee and also claims she was unaware appellee wanted to build a house on the lot. The

lot was located in a residential subdivision and was surrounded by houses.

Appellee also made several other visits to the lot with various friends to inspect the lot and ask their opinion. In total he made about five or six trips.

On April 23, 1972, appellee had a percolation test run and the lot did "perk." Appellee informed Mrs. Ellis of this fact. Appellee testified that Mrs. Ellis made several comments to him to the effect that inasmuch as the lot had perked he was "O. K." for a septic tank. Mrs. Ellis has denied these statements.

On April 25, 1972, appellee entered into a contract purchasing the land from appellant for $2,500.

During or about October of the same year, appellee contracted with Hensley Septic Tank Service to have a septic tank installed. The original estimate for cost was approximately $2,500, or from $1,800 to $2,600. About three weeks into the job, however, Hensley informed purchaser that he had encountered problems and that it would cost additional money, or approximately $3,500. The final bill submitted to appellees was for $5,050. The septic tank is still not completed and has not been approved by the department of health. Mr. Hensley testified he could complete the work and get a septic tank approved but it would cost more money.

Mr. Paul Pate, employee of Jefferson County Department of Health, testified that the lot in question was originally approved for septic tanks but that this approval was later withdrawn. A letter was sent in 1959 to interested parties, including appellant-real estate company who also is the owner of the lot, informing them of the withdrawal of approval and problems with the lots. The problem, according to Mr. Pate, is the existence of a large amount of ground water. Mr. Pate described it as similar to an artesian well or spring situation. He testified that in its present condition putting a septic tank in it would be like putting a septic tank into a "dozen or so springs." Mr. Pate testified

that in his opinion a satisfactory system could not be put in and approved.

The 1959 letter sent to appellant corporation is as follows:

"November 17, 1959

"Mr. George O. Wright, Jr.
1021 South 20th Street
Birmingham, Alabama

"Re: Skyline Estates
 Subdivision
 Located N. ¼ SE.
 ¼ Sect. 34, Tp
 18S, R3W Jeffer-
 son County, Alabama

"Dear Sir"

"After careful study of the abovementioned subdivision, this is to advise that this Department cannot give approval of septic tank systems within the subdivision on the lots as outlined below.

"Lots 2, *3*, 4, *7*, 8, 11, 14, 24, 25, 26, 28, 36, 40, and 41. The reason that these lots cannot have our approval is due to rock and ground water problems existant at the present time, also inadequate areas for field line construction. It will be necessary to provide adequate subsurface drainage and sufficient areas for field line construction for the abovenamed lots before approval can be given by this department.

"Yours truly,

"/s/ Paul Pate

"Assistant Director
Bureau of Sanitation

"PP:md

"cc—Mr. C. R. Rew
 Alabama Home Builders
 1201—3d Avenue, North
 Birmingham, Alabama

"cc—Mr. Ervin Jackson
 Jackson Securities
 213 North 21st Street
 Birmingham, Alabama" [Emphasis added to show lot in question]

---

On several of these numbered lots septic tanks have indeed been approved. However, Mr. Pate testified that in his opinion no other lots were in the same condition as Lot 3 and Lot 2; all others being superior.

In any event, it is undisputed that appellees did not receive a copy of the letter, nor were they informed of the existence of the letter, nor were they informed of the contents of the letter prior to entering into

the contract, nor did they learn for several months thereafter.

It is this failure to inform by appellant-corporation and the statements made to appellees by Mrs. Ellis which gave rise to appellees' complaint.

The issue was submitted to the jury under the following possible theories of recovery as defined in the judge's oral charge to the jury:

"Now this case is what we call a case charging legal fraud by the Plaintiffs against the Defendant. That legal fraud is charged in three separate respects: First, the Plaintiff is charging that the Defendant, acting by and through one of his agents who was acting within the line and scope of her authority, either willfully and intentionally made a misrepresentation of a material fact leading up to the execution of the contract or that she made willful—first let me add to that. She made a willful and intentional misstatement or misrepresentation knowing that it was false or that she, in alternative, made a willful misrepresentation of a material fact not knowing whether it was true or false, and that the Plaintiffs relied upon her misrepresentation to their detriment; and as a direct consequence of their reliance upon said misrepresentation they suffered damages.

"The next contention is that the Defendants innocently or by mistake misrepresented a material fact to the Plaintiff which induced the Plaintiff to enter into the contract, and as a proximate consequence thereof the Plaintiffs received and suffered injuries and damages.

"The next contention is that the Defendants were acting in what we call a fiduciary relationship with the Plaintiffs, and that the Defendants were in possession of information or knowledge that was material to the subject of the contract, and that they were under the duty to disclose to the Plaintiffs all of the in-formation that they were in possession of, and that they failed to do that, and as a proximate consequence thereof the Plaintiffs relied upon the conduct of the Defendants to execute the contract to their detriment."

Appellant's argued assignments of error present five contentions to this court. These alleged errors result from the trial court's denial of motions made by appellant relating to a directed verdict; judgment notwithstanding the verdict or in the alternative new trial; and error in the court's charge to the jury.

 At the outset, we note the time honored principles that a jury's determination of factual issues will not be disturbed on appeal unless plainly and palpably wrong. *Merchants Bank v. Cotton*, 289 Ala. 606, 269 So.2d 875. Failure by a trial judge to grant a new trial strengthens the presumptions as to the correctness of the verdict. *Ditsch v. Baggett Transp. Co.,* 258 Ala. 26, 61 So.2d 98.

The first contention of appellant is that the evidence failed to establish any material misrepresentation by appellant with respect to the purchase of the real estate.

 The contract between the parties included the following provisions:

"The sale of this lot is not contingent on percolation test.

"It is understood and agreed that this lot has not been approved by the county health department for a septic tank."

Appellant apparently contends that the above provisions are a sufficient disclosure of the contents of the 1959 letter so as to put appellees on notice and to charge them with knowledge of everything to which an inquiry would lead.

We do not find that the inclusion of these clauses were enough to put purchaser on notice of any facts relating to the unsuitability of the lot sold.

We note a difference in the interpretation to be given the contract clauses as opposed to the 1959 letter. The contract clauses relate simply to terms concerned with the sale of the lot. Such terms are not in dispute. The 1959 letter relates to the suitability of the lot for construction of a home, the purpose for which purchaser testified he bought the lot, and the basis of his complaint. Additionally, we note appellee testified that Mrs. Ellis told him these words were included because it was just a standard form contract.

Tit. 7, § 108, Code of Ala.1940 (Recomp.1958), reads as follows:

"Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

■ Material facts are of such nature as to induce action on the part of the complaining party. *Cooper v. Rowe*, 208 Ala. 494, 94 So. 725. In this case appellee testified that had he known of the existence of the letter he would not have purchased the lot. This adequately describes a material fact. *Shafer v. Timmons*, 51 Ala.App. 157, 283 So.2d 609.

The evidence in this case shows conclusively that appellant-corporation was aware of the existence of the problems relating to the lot in question as per the 1959 letter. Such information was not imported to the purchaser. In fact, purchaser's testimony is that not only was he not informed of the existence of the letter and its contents, but that he was given assurances that the lot was "O.K." for a septic tank. It is true that Mrs. Ellis has denied giving these assurances, but credibility of the witnesses is for the jury. *Venable v. Venable*, 165 Ala. 621, 51 So. 833.

■ We think appellee's testimony creates a scintilla of evidence as to a material misrepresentation to warrant submission to the jury. *Kilcrease v. Harris*, 288 Ala. 245, 259 So.2d 797.

■ Where there is evidence reasonably affording an inference as to whether plaintiff was defrauded, and if so, when the plaintiff discovered the fraud, the case is one for the trier of fact. *Loch Ridge Const. Co., Inc. v. Barra,* 291 Ala. 312, 280 So.2d 745.

■ It is true as appellant contends that notice of facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of these facts. *Williams v. Dan River Mills, Inc.,* 286 Ala. 703, 246 So.2d 431.

However, under the facts of this case, we do not find the inclusion of the aforementioned clauses, concerned with the terms of the sale and in light of appellee's testimony as to Mrs. Ellis's explanation for their inclusion, to be such as to put appellees on notice of the existence and contents of a 1959 letter concerned with the suitability of the lot for septic tank installation. We, accordingly, find no error in the trial judge denying appellant's motion for a directed verdict as it relates to the argument.

The second contention of appellant is that appellee failed to establish causation between any damages suffered by him and any alleged misrepresentation by appellant. In short, appellant contends that even assuming inadequate or no disclosure of the 1959 letter appellees have suffered no damages as a consequence thereof.

Appellant argues that any damage caused to appellees by its failure to disclose the 1959 letter was abrogated completely when the appellees received approval from the Jefferson County Health Department for septic tank *construction.* Thus, it appears appellant is contending that the mere approval for *construction* is enough to abrogate statements made by Mrs. Ellis that if appellees got the percolation test run successfully they were "O.K." as far as septic tank approval.

Damages are an essential element of fraud. *Maring-Crawford Motor Co. v. Smith,* 285 Ala. 477, 233 So.2d 484.

A person injured by fraudulent representations can recover all damages contemplated by the parties or which, though not within the contemplation of the parties, were either the necessary or the natural and proximate consequences. *Kilby Locomotive & Machine Works v. D. B. Lacy & Son,* 12 Ala.App. 464, 67 So. 754.

Here, appellee has testified that had he known of the letter he would not have purchased the lot. We are not persuaded by appellant's argument that approval for septic tank construction abrogates the failure of appellant to inform appellees of the existence of the contents of the 1959 letter and the assurances given by Mrs. Ellis. The expenditures and damages incurred were a natural consequence of the misrepresentation. There is no error in the trial judge's rulings.

The third contention argued by appellant is that appellees have failed to establish any knowingly, willfully, or intentionally misrepresented material fact on the part of appellant acted upon or relied upon by appellees.

Appellant's contention is that a statement regarding an event in the future cannot serve as the basis on which to predicate fraud unless there is a showing of actual fraudulent intent at the time the statement was made.

For better understanding of the basis of this contention by appellant we feel compelled to set out these parts of appellee-husband's testimony dealing with the issue.

"A. I telephoned Mrs. Hare [referred to earlier as Mrs. Ellis] with Jackson Company—at that time Mrs. Hare—with Jackson Company in late February and told her that I was looking for a lot in the Rocky Ridge-Bluff Park area to build a home on.

"Q How long had you known Mrs. Hare at that time?

"A I had known her some four or five years.

"Q Did you call any other real estate people about a lot?

"A No, sir, I did not. I had known her from my previous residence on Rocky Ridge Road. And I knew her to be in the real estate business, and I trusted her.

. . . . . .

"Q Tell the jury what Mrs. Hare said to you and what you said to her.

"A We went out a little later on, I think it was in late March or early April, to look the lot over again under better conditions this time. We did have an opportunity to go out and look the property over and walk the property this time. And she made the statement to me that—she says, 'If you tell anybody I told you this I won't admit it, but be sure and have a percolation test run on the property.' And I asked her if that was for a septic tank, and she said yes, that it was.

. . . . . .

"Q These words: 'It is understood and agreed this lot has not been approved by the Jefferson County Health Department for a septic tank,' when she brought the contract to you, were those words on it? Did she ask you about it?

"A Yes, sir. I asked her can I get a septic tank on it. She said, 'Has it been percolated?' She said, 'You are okay.'

"Q Did you ask her why these words were on the contract?

"A She said it was just a standard form contract, standard wording.

"Q What did she say concerning whether or not you could get a septic tank at that time?

"A She said she didn't think I would have any trouble.

**362**

"Q Did she say what condition—what needed to be determined by you to determine whether or not you could get a septic tank?

"A No, sir, other than the percolation test.

"Q Well, did she say get the percolation test and you can get a septic tank, or did she say something else?

"A She said if I had the lot perked I shouldn't have any trouble getting a septic tank.

"Q Did she tell you anything about having previously applied for approval on that lot and it being withheld?

"A No, sir.

"Q Did you have any notice—had anyone at Jackson Company told you anything about their having applied for approval?

"A No, sir.

. . . . . .

"Q And you understood that the purpose of the percolation test was the first step in obtaining approval for a septic tank with the County Health Department, did you not?

"A Yes, sir. I thought if I got the percolation test approved I had a septic tank approved.

. . . . . .

"Q [sic] Now, we have talked earlier about a standard form, and I asked Mrs. Hare if that meant I couldn't get a septic tank or if I would have trouble getting a septic tank. And she said, 'If it perked you shouldn't have any problems.'

"Q It is true, is it not, Mr. Faulkner, that before you signed this contract, which is Plaintiff's Exhibit 1, you had made your own investigation and you had relied on your own investigation and your own percolation test in buying this lot?

"A I relied on Mrs. Hare who carried me by the lot and showed it to me and represented it to me to be a buildable lot. And then after investigation of my own, I purchased the lot.

"Q You understood when you read that there was a two-fold system of approval for beginning and approval for use?

"A Yes. But had I know[n] of that letter's existence, I wouldn't have purchased that property.

. . . . . .

"A Well, I thought that if I had the percolation tank-septic tank permit approved. I had approval for a septic tank.

"Q Is that what they had told you?

"A No, sir. Not in that many words.

"Q What had she told you?

"A Basically, that if I had the percolation test approved that I was okay.

. . . . . .

"Q Gordon, did she tell you the lot wasn't approved?

"A No, sir. She didn't tell me the lot wasn't approved. She said that I should take percolation tests on the lot, and that if the percolation test performed as it should that I shouldn't have any trouble getting approval for a septic tank.

"Q So, you relied and understood—I may be going into mental operations, but from what Frank said, you understood that the lot was not approved from her conversation and that contract?

"A Yes, sir. But I come to find out it had been turned down sometime before."

■ In *Fidelity & Casualty Co. of New York v. J. D. Pittman Tractor Co.,* 244 Ala. 354, 358, 13 So.2d 669, 672, our supreme court set out the following test to determine whether a given representation is an expression of opinion or statement of fact:

"Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances

of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury. *Foster v. Kennedy's Adm'r, supra* [38 Ala. 359]; *Moses v. Katzenberger,* 84 Ala. 95, 4 So. 237; 26 *Corpus Juris,* § 21, pp. 1083, 1084, 12 R.C.L. section 15, page 247."

 Applying the facts of this case to the standards set out by the supreme court, we think the statements made were such as to create an issue for the jury. We also note further language found in *Fidelity & Casualty Co., supra,* pertinent to this case.

"Whenever a person states a matter which might otherwise be only an opinion, not as a mere expression of his own opinion but as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, the statement clearly becomes a statement of fact. *Coleman v. Night Commander Lighting Co.,* 218 Ala. 196, 118 So. 377; *Cartwright v. Braly, supra* [218 Ala. 49, 117 So. 477]; *Tillis v. Smith Sons Lumber Co.,* 188 Ala. 122, 65 So. 1015; *Moses v. Katzenberger, supra*; *Tabor v. Peters,* 74 Ala. 90, 49 Am.Rep. 804; *Tanner v. Clark,* 13 Ky.Law Rep. 922.

"Under the circumstances of the instant case the representation was of a material existing fact, and not mere opinion, and upon which appellee had the right to rely. *Southern Building & Loan Ass'n v. Dinsmore,* 225 Ala. 550, 144 So. 21; *Standard Oil Co. v. Myers,* 232 Ala. 662, 169 So. 312." (244 Ala. at 358, 13 So.2d at 672)

We find no error in the trial judge's rulings.

 The fourth argument advanced by appellant is that the trial judge erred in its part of the charge to the jury dealing with fiduciary relationship. Appellant contends there is no evidence of fiduciary relationship and that the trial judge erred in charging the jury that a confidential or fiduciary relationship existed between appellees and the appellant.

Tit. 7, § 109, Code of Ala. 1940 (Recomp.1958), reads as follows:

"Suppression of a material fact, which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case."

It appears appellant is contending that the trial judge erred in instructing the jury that a confidential relationship existed. This is not the case. The judge, in his oral charge, does not state to the jury that, as a matter of law, a confidential relationship existed between the parties. The court charge clearly states that it was appellees' theory that such relationship existed and that the question was one for the jury.

In any event, we are of the opinion the issue of confidential relationship was properly submitted to the jury. Appellee testified that Mrs. Ellis told him to have a percolation test run. She also gave assurances that the lot was suitable for a septic tank. We should not be interpreted as holding that a confidential or fiduciary relationship exists between all buyers and sellers. But, in this instance, once having given the unsolicited information regarding the condition of the lot, i. e., ". . . be sure and have a percolation test run on the property.", it then became a jury question as to whether it was incumbent to disclose all information within the knowledge of appellant, to wit, the 1959 letter.

 Our supreme court has quoted with approval the following:

" 'Where one responds to an inquiry, it is his duty to impart correct information,

and he is guilty of fraud if he denies all knowledge of a fact which he knows to exist, or if he gives equivocal, evasive, or misleading answers calculated to convey a false impression, even though literally true as far as they go, or if he fails to disclose the whole truth. \* \* \*

" 'Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all, he must make full and fair disclosure. To tell half a truth has been declared to be equivolent to the concealment of the other half. A partial and fragmentary disclosure, accompanied by the willful concealment of material and qualifying facts is not a true statement, and is as much a fraud as an actual misrepresentation, which, in effect, it is. Therefore, if one willfully conceals and suppresses such facts, and thereby leads the other party to believe that the matters to which the statements made relate are different from what they actually are, he is guilty of a fraudulent concealment.' " (*American Bonding Co. of Baltimore v. Fourth Nat. Bank,* 206 Ala. 639, 641, 91 So. 480, 482, 483, quoting from 12 R.C.L.,.§§ 70–71)

See also 37 Am.Jur., *Fraud & Deceit,* § 151.

Appellee, having testified as to what Mrs. Ellis told, created a scintilla of evidence upon which to send the issue to the jury.

■ Appellant's last argument is that appellees' claim is barred by the statute of limitations. Tit. 7, § 42, Code of Ala. (Recomp.1958), reads as follows:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

The contract for sale was signed on April 25, 1972. This suit was filed May 2, 1973. Appellant contends again that the aforementioned clauses indicating no approval for a septic tank put appellees on notice as of April 25, 1972, and that the suit was not filed within a year. We have already held these clauses were not enough to put appellees on notice.

We think the issue was properly submitted to the jury.

The evidence indicates that appellees did not begin efforts toward installing a septic tank until September or October of 1972. It was only after this that they discovered the problems. A copy of the 1959 letter was not received until January 1973.

■ Where there is evidence reasonably affording an inference as to whether a plaintiff was defrauded, and if so, when the plaintiff discovered the fraud, the case is one for the trier of fact. *Loch Ridge Const. Co., Inc. v. Barra, supra.*

The question of when the cause of action occurred was one for the jury, and they were warranted in finding the fraud not discovered until a date within one year of the filing of the suit. *Loch Ridge Const. Co., Inc. v. Barra, supra.*

All argued assignments of error having been considered, this case is due to be and is, therefore and accordingly, affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.