386 So.2d 727 (1980)
NOBILITY HOMES, INC.
v.
James A. BALLENTINE and Nelly R. Ballentine; Rollin Homes Corporation.
78-363.
Supreme Court of Alabama.
May 16, 1980.
As Corrected on Denial of Rehearing August 8, 1980.
*728 Richard B. Garrett of Rushton, Stakely, Johnston & Garrett, P. A., Montgomery, for appellant.
George H. B. Mathews, Montgomery, for James A. Ballentine and Nelly R. Ballentine.
J. Floyd Minor of Wood, Minor, Parnell & Sforzini, P. A., Montgomery, for Rollin Homes Corporation.
PER CURIAM.
This case concerns a suit for misrepresentation and breach of warranty against both the retailer and the manufacturer of a mobile home purchased by appellees, James and Nelly Ballentine. The trial judge entered judgment for the Ballentines on both counts pursuant to a jury verdict. We affirm, in part, reverse, in part, and render.
The questions presented and discussed are:
(1) Is the jury's verdict which passed all compensatory damages awarded against the retailer on to the manufacturer supported by the weight and preponderance of the evidence?
(2) Did the trial court err in allowing the misrepresentation claim to go to the jury when the uncontroverted evidence was that the representation in the manufacturer's brochure was entirely and literally accurate yet could possibly mislead the purchaser?
(3) Did the trial court err in awarding the attorney's fees and costs to the purchasers to be paid by the manufacturer under the federal Magnuson-Moss Warranty Act?
During the month of September, 1977, plaintiffs James A. and Nelly R. Ballentine placed an order with Bill Dickinson, president of defendant Rollin Homes Corporation, for the purchase of a Georgetown model mobile home manufactured by defendant Nobility Homes. During the negotiations for the sale of the home, Dickinson gave the Ballentines a sales brochure distributed by Nobility on the Georgetown home. The brochure made the following representation under the heading of "Construction Quality Features": "Floor decking is ¾" tongue and groove for added strength."
The contract finally agreed upon between Dickinson and the Ballentines provided that the home would be upgraded in certain respects. Dickinson failed to include some of these options in the final sales order and the Ballentines were reimbursed by him for these deficiencies. The Ballentines ordered an air conditioning unit for the home which was purchased by Rollin Homes from a Montgomery dealer. Nobility did not supply the air conditioning unit.
The mobile home was delivered from Rollin Homes' lot to the plaintiffs' site in Elmore County, Alabama, on October 13, 1977. The home was then set up over a period of three or four days by Bill Dickinson and other employees of Rollin Homes. Since this was a doublewide mobile home, the set-up included fastening the two halves together, leveling the trailer, connecting pipes and ducts between the two halves, and installing molding, outside lap board and other items where the two halves of the home joined. "Corner lapping" was installed by Rollin Homes as part of the set-up, as were gutters on the front and back of the home.
During the months after the Ballentines took possession of the home, they discovered numerous deficiencies in the home. Rollin, Nobility and other firms attempted to remedy the situation. They could not satisfy the Ballentines.
During the attempted remedy of the deficiencies in the home, Ballentine had cause to examine the hidden sub-flooring or floor decking in his home. He found that it was constructed with six-foot wide particle board with tongue and groove joints at each six-foot interval. Particle boards are made from compressed sawdust and glue.
*729 The Ballentines filed suit against Rollin Homes alleging that Rollin breached its implied warranty of merchantability in that the home did not heat or cool properly; the vinyl floor covering was creased; the floor was uneven; the ceiling tile was defective; the roof and bay window periodically leaked; the exterior paneling was broken and chipped; the exterior fasteners were corroded; and, there were staples imbedded in the carpeting. The Ballentines demanded $10,000 in damages, plus costs and an attorney's fee pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2). Rollin Homes filed a third-party complaint against Nobility and alleged that if Rollin was found liable for any or all of the damages that the Ballentines demanded, then Nobility should be held liable for any or all of such damages because Nobility impliedly warranted to Rollin that the home was merchantable. Subsequently, the Ballentines amended their complaint by adding Nobility as a defendant and adding a count in fraud against Nobility alleging that Nobility fraudulently represented to the Ballentines, through its brochure, that the home had tongue and grove flooring when in fact the flooring was constructed of tongue and groove particle board.
The total invoice price of the home, including all the options ordered and before Dickinson's refund for options Ballentine did not get because Dickinson failed to order them, was $26,291.55. The stock price of the home without options was $24,830. Ballentine testified that in his opinion the home was actually worth "... less than $16,000, fifteen or sixteen, or something like that."
The jury returned a verdict against Rollin in the amount of $8,000 on the warranty claim. It then passed that entire amount on to Nobility pursuant to the third-party complaint. On the fraud count, the jury returned a verdict against Nobility in the amount of $15,000. Judgment was entered pursuant to the jury's verdict.

I
Nobility appeals, contending the trial court erred in not granting a new trial when it alleged in its motion for J.N.O.V. or new trial:
"The verdict of the jury in favor of Rollin Homes Corporation against Nobility was against the weight and preponderance of the evidence."
Although the plaintiff correctly states that an allegation that the verdict is contrary to the evidence is insufficient to bring the issue of damages before the trial court, we do not believe that this issue is an allegation that the damages were excessive. Rather, the issue is whether the jury erred in finding that Nobility is liable for all the damages assessed against Rollin on the warranty claim.
As earlier noted, there were several alleged deficiencies in the home which the Ballentines contended constituted a breach of warranty. A review of the evidence indicates that some of these deficiencies were the sole responsibility of the manufacturer; some were the sole responsibility of the retailer; and in some areas the retailer and manufacturer shared the responsibility. Ballentine testified that the home had a value of between $15,000 and $16,000. The invoice price was $26,291.55; therefore, the evidence is adequate to support a jury finding that the $8,000 represents damages for only those deficiencies which were the sole responsibility of Nobility and does not represent the loss in value of all the alleged deficiencies in the home. That being the case, we cannot overturn the verdict of the trier of fact.
We should point out that during trial the judge refused to submit special interrogatories for the jury which were offered pursuant to Rule 49, ARCP. The interrogatories would have ascertained for which specific deficiencies the jury was assessing damages.
Although the submission of interrogatories is within the sole discretion of the judge, it appears that submission of them would have been helpful in this case.
The judgment of the court below on the third-party complaint is due to be affirmed.

*730 II
The trial court not only erred in submitting the fraud count to the jury but also instructed the jury incorrectly on the law of fraud in Alabama. Ballentine contends that "tongue and groove" implies a three or four-inch wide board and not a six-foot wide particle board. He testified, and his counsel stipulated, that the flooring in the home did in fact have a tongue and groove joint. The jury was instructed that a representation, though literally true, which is misleading may constitute a misrepresentation actionable under our statutes. There is no Alabama authority which supports such a proposition.
This Court has heretofore consistently adhered to the position that a mis representation as envisioned by the statute must in fact be a false representation. The most recent expression of our view on the subject of misrepresentations actionable under § 6-5-101 is found in Pugh v. Kaiser Aluminum & Chemical Sales, Inc., 369 So.2d 796 (Ala. 1979), wherein it was said:
"In actions for fraud, it is necessary that there be a false representation concerning a material existing fact. The plaintiff must rely on that false representation and must be damaged as a proximate result." (Emphasis added.) 369 So.2d at 797.
In another recent case, International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977), this Court enunciated the elements of legal fraud under § 6-5-101 in the following manner:
"Regardless of whether the representations were made wilfully, recklessly or mistakenly, it has been held that there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result." (Emphasis added.) 350 So.2d at 394.
At least as early as 1940, this Court pointed out that the essence of legal fraud lies "... in the assertion of that to be true which is not true . . . ." Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940); see Rudman v. Hooks, 252 Ala. 280, 40 So.2d 866 (1949).
The transaction in this case was an arm's length business transaction. As this Court observed in a 1945 suppression case, Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1945):
"[W]hen both parties are intelligent and fully capable of taking care of themselves and dealing at arms' length with no confidential relations, . . . no duty to disclose exists when information is not requested, and . . . mere silence is then not a fraud." 247 Ala. at 377, 24 So.2d at 562.
Under the facts of this case, no duty to disclose arose because no request for information regarding the material comprising the decking was made; plaintiff simply assumed that the decking was made of wood.
The judgment entered on the fraud count is due to be reversed; and this Court renders a judgment for Nobility on the fraud count.

III
The last issue raised on this appeal concerns the trial court's award of attorney's fees and costs to Rollin Homes against Nobility. Nobility correctly points out that the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), under which the award was made, applies only for the benefit of consumers and does not affect the relationship between manufacturers and retailers. Nevertheless, the error here complained of was harmless because the benefit of the award inured in fact to the Ballentines, the consumers in this case, and not to Rollin Homes.
The trial court awarded fees and costs to the Ballentines against Rollin Homes, in the first instance, and then passed on this award to Rollin Homes against Nobility on the third-party complaint. The effect was to award fees and costs to the consumer against the manufacturer. Although the court technically erred in making the award through the retailer, the error was harmless and, thus, not reversible error, inasmuch as *731 the court could have just as easily made the award directly to the plaintiffs on their complaint against Nobility. Therefore, this portion of the judgment below is due to be, and hereby is, affirmed.
AFFIRMED, IN PART; REVERSED, IN PART, AND RENDERED.
TORBERT, C. J., and MADDOX, FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
JONES and SHORES, JJ., concur in part and dissent in part.
JONES, Justice (concurring in part and dissenting in part):
I concur in each aspect of the majority opinion except that portion reversing the award of punitive damages based on the fraud claim. For the purpose of clarity, it should be noted that the materiality of the alleged misrepresentation lies in the nature and character of the product sold. Plaintiffs purchased a doublewide mobile home composed of two units, which, when combined form a single dwelling. It is essential that the flooring material be of such strength that the floor of each component can be leveled, thus allowing the units to be tied together at the sides and roof.
The term "tongue and groove for added strength," used in this context, denotes the very construction characteristic sought by the purchaser; and the jury could have reasonably inferred from the evidence that this representation was a material consideration in inducing the Plaintiffs to purchase the product. The floor, in fact (after repeated attempts by the retailer), could not be leveled so as to bring the two separate units into satisfactory alignment, thus accounting for a substantial number of Plaintiffs' complaints.
Here, the jury could have reasonably inferred from the evidence that Nobility's brochure, though literally true, was nevertheless misleading and, thus, a misrepresentation. Nobility's mobile homes contained floors made up of interlocking particle board panels so that the description, "floor decking is ¾" tongue and groove for added strength," was in fact accurate so far as it went. Plaintiffs' expert witnesses, however, testified that the designation "tongue and groove" commonly refers to solid wood strips and would have suggested such to any consumer having some familiarity with building materials but not enough to realize that interlocking particle board panels might also be described as "tongue and groove."
Furthermore, the suggestion that "tongue and groove" referred to solid wood, rather than particle board, was enhanced by the words contained in the brochure, "for added strength." Here, too, the description was misleading though literally true as a statement of fact. Interlocking particle board panels having a width of six feet might provide greater support than the same panels without "tongue and groove" connections, but the jury was free to find, as a reasonable inference, that "for added strength" was intended to create, in the mind of the purchaser, the false impression that the subflooring was composed of solid wood tongue and groove boards, and that the purchaser, in reliance thereon, acted to his detriment in purchasing a mobile home of inferior quality.
Significantly, also, Nobility's intracompany documents specifically referred to its mobile home floor decking as "tongue and groove Novodeck panels." The omission of the word "panels" from the company's brochure suggests, or may imply, within the fact finder's prerogative, that the misleading nature of the brochure was not in fact inadvertent. There was sufficient evidence, therefore, from which a jury could have found both the existence of fraud and the intent to defraud or deceive, thereby justifying the award of punitive damages.
Nobility's brochure stated its mobile home flooring to be of tongue and groove (decking) for added strength. It failed to state, however, that the decking in fact was made up of particle board panels and not of solid wood boards. Due to the misleading nature of the description, the jury's finding that such omission amounted to fraud, whether of the concealment or misrepresentation *732 variety, is amply supported by the evidence. Section 6-5-102, Ala.Code 1975, expressly provides that the "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud." The statute goes on to state that the "obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." (Emphasis added.) Nobility's brochure was accurate so far as it went; however, a finding that the misleading nature of the terminology, "tongue and groove for added strength," obligated Nobility to go further and communicate additional facts was within the province of the jury in adjudging Nobility guilty of misrepresentation.
Ordinarily, there is little difficulty in distinguishing between fraud resulting from a false statement and fraud resulting from the suppression, or concealment, of some fact which ought to have been revealed. The distinction is somewhat more elusive in the case of a half-truth, such as exists in this case. A half-truth is defined, in general, as an assertion which is literally true so far as it goes but which would be materially qualified were additional facts brought out rather than concealed. See American Bonding Co. of Baltimore v. Fourth National Bank, 206 Ala. 639, 91 So. 480, 482-483 (1921), quoted in Jackson Company v. Faulkner, 55 Ala.App. 354, 315 So.2d 591, 599-600 (1975). See, also, First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir. 1977).
It is only through the assertion of certain selected facts that the other party is induced to act at all, but it is the concealment or suppression of other facts which induces him to act contrary to his interest. By definition, then, a fraud resulting from a half-truth consists of both the commission of an act and, at the same time, an omission. Assuming, therefore, that an action for fraud resulting from a half-truth is correctly analyzed under § 6-5-102 for suppression, rather than under § 6-5-101 for misrepresentation, Appellees' failure to correctly classify the nature of the fraud committed is of no import. Appellant had notice from Appellees that fraud, generally, was being alleged and that the basis for that fraud lay in the misleading nature of Appellant's brochure. As stated by the Court in Huntsville Dodge, Inc. v. Furnas:
"Where, with intent to deceive, a party to a contract conceals material facts which good faith requires him to declare or disclose, it is the equivalent of false misrepresentation and fraudulent concealment." 361 So.2d 585, 588 (Ala.Civ.App.1978), citing Southern Land Development Co. v. Meyer, 230 Ala. 40, 159 So. 245 (1935).
To allow this type of literal truth to fall outside the ambit of misrepresentation contemplated by our fraud statutes is to place a premium on the craftiness of the drafter. For the reasons stated, I find no error in any of the trial Court's rulings with respect to the fraud aspect of the case.
SHORES, J., concurs.