PER CURIAM.
This appeal attacks, on a claim of insufficiency of evidence, the trial court’s final judgment setting aside a deed on the ground of actionable fraud. We affirm.
We set forth the pertinent portions of the challenged decree:
This cause coming on to be heard upon the petition of the plaintiff, Fox, seeking to quiet the title to the property described in the Bill of Complaint and other relief, and upon the Answer and Cross-claim of the defendant, McLendon, and upon the oral testimony of the witnesses and exhibits admitted into evidence and the entire file.
The evidence in the case establishes, without dispute, and the Court so finds, that the defendants, Gibbs and McLen-don, each owned an undivided one-half interest in and to the land described in the Bill of Complaint.... [A]nd the evidence further establishes, and the Court so finds that in July, 1970, the defendant, Susie E. Gibbs, [Defendant McLendon’s mother, now deceased] conveyed to the plaintiff, Fox, an undivided one-half interest in and to said property.
The evidence further shows, and the Court so finds, that on or about the 26th day of December, 1980, the plaintiff, Fox, approached the defendant, McLendon, requesting the defendant, McLendon, to sign a quitclaim deed and represented at said time and place that the sole purpose of the quitclaim deed was in order to clear a technicality in title, and so that the plaintiff could “obtain an abstract.” The Court finds as a fact that said representation was material and false, and was relied upon by the defendant, McLendon, in executing the quitclaim deed; that as soon as the defendant, McLendon, discovered the fraud, she demanded the deed be returned and held for naught, and this was refused by the plaintiff, Fox. The Court finds that the deed executed by the defendant, McLendon, on the 26th day of December. 1980 that is recorded in Book 183. Page 775 of the Office of the Probate Judge of Lamar County was obtained by fraud, and is due to be set aside and held for naught.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that said *1112 deed is hereby set aside and held for naught, and an undivided one-half interest in and to the property above described is vested in the defendant, Judy Gibbs McLendon.
It is not necessary or beneficial to cite the myriad of Alabama cases dealing with the law of misrepresentation. Indeed, counsel for the respective parties are essentially in agreement as to the applicable legal principles, relating both to the law of fraud and the standards of appellate review.
The factual dispute below centered around the permissible inferences to be drawn from the testimony of plaintiff Fox[1] and defendant McLendon concerning a conversation between the two on December 23, 1980. To understand the import of this testimony, we need to review the background facts leading up to the December 23rd conversation.
In 1962, Susie E. Gibbs conveyed to McLendon, her daughter, a one-half interest in the subject property. In 1970 Mrs. Gibbs, by way of statutory warranty deed, purported to convey the entire property to Fannie Fox and her husband, both now deceased.
In 1980, when Fox retained a real estate agent to sell the property, she was informed that there was a “problem” with the title, and before the property could be sold, she would have to obtain a quitclaim deed from McLendon. It is this deed that became the subject of the December 23rd conversation.
It will suffice for our purposes of review to concentrate on the testimony of the plaintiff Fox. The issue presented — the sufficiency of the evidence — is dramatized in the following excerpts from the briefs of the respective parties:

Appellant's Summary of Fox’s Testimony-

In 1980 the plaintiff, Fannie Fox, contacted real estate agent to sell property. The real estate agent informed her of a problem with title. Plaintiff, Fox, contacted McLendon and Gibbs and informed them of problem with title, and that it would be necessary for defendant, Judy Gibbs McLendon, to sign a paper before the plaintiff, Fox, could sell her property. After conversation at home of defendant in Florence, Alabama, Plaintiff, Fox, returned to Jasper, and had quit claim deed prepared. Plaintiff, Fox, returned to Florence, Alabama, to the business establishment of the defendant, McLendon and her husband, Alvin McLendon, approximately four (4) days later with deed.
The McLendon’s [sic], husband and wife, executed deed conveying all their right, title and interest in subject property to plaintiff, Fox. A Mr. Nelson Smith, and a Ms. Cherly Wilkes signed the deed as witnesses. The deed conveyed all right, title and interest of subject property to Fannie Fox.
Defendant, McLendon, called plaintiff, Fox, by telephone asking for return of deed. Fox refused.

Appellee’s Summary of Fox’s Testimony.

In December of 1980, the Appellant, Fox, after telephoning the Defendant, McLendon, came to Florence, and stated to her in substance that she needed “a paper” signed so she could get an abstract, and clear up a technicality as to the property. The Appellant, Fox, knew at this time that McLendon owned an undivided one-half interest in the property, and that McLendon was unaware of it, and she did not communicate this fact to McLendon. On a subsequent trip, the instrument was presented to McLendon at her husband’s business the day after Christmas, when they were extremely busy, and McLendon relied on the representations of Fox and signed the same without reading it.
That within six (6) hours after the Plaintiff, Fox, had tricked and defrauded the Defendant, McLendon, into signing the quitclaim deed, the Defendant, McLendon, after calling her counsel, realized what had happened, and demanded that the same be returned.
*1113 In the argument section of his brief, appellant, Fox’s executor, persuasively contends:
[W]here is the evidence of fraud or misrepresentation? Trial court found that Fox did on or about 26th day of December, 1980, approach the defendant, McLendon, requesting the defendant, McLendon, to sign a quit claim deed, and representing at said time and place that the sole purpose of the quit claim deed was in order to clear a technicality in title, and so the plaintiff could, “obtain an abstract.”
The evidence simply does not exist for that finding to be had by the trial court.
Both parties testified that Fox needed a paper signed by McLendon so that Fox could sell her land. There was no question in these peoples [sic] minds that Fox had purchased the property, and was claiming to be the owner.. ..
There is no testimony to any conversation between Fox and McLendon where Fox said to McLendon, or in presence of McLendon, that the purpose of the quit claim deed was to clear a technicality in title. How could one represent what one does not say?
It is the gist of appellant’s argument that the only permissible inference which the trial court could have drawn from the evidence precluded, as a matter of fact and law, a finding of actionable fraud voiding the deed in question. According to the appellant’s version of the evidence, Fox made no active misrepresentation respecting the ownership or title to the property. She merely requested the defendant to sign the “paper” so she, the plaintiff, could sell the property. The defendant and her husband did sign the deed before two subscribing witnesses. Therefore, says the appellant, the trial court’s order impairing the validity of the deed is not sustainable under the evidence.
Citing Roberts v. Carroll, 877 So.2d 944 (Ala.1979) appellee counters thusly:
We submit that all of [the] elements [of fraud] are present in this case, and they were established without dispute by the testimony of the Plaintiff-Appellant, Fannie Fox, herself, as follows:
A. Mrs. Fox admitted that she knew that Mrs. McLendon owned an undivided one-half interest in the property and that Mrs. McLendon did not remember her ownership by Mrs. McLendon’s repeated statement “that she would not sell if she had any part in it.”
B. Mrs. Fox deliberately and intentionally withheld this information from Mrs. McLendon.
C. The false representation that she made to Mrs. McLendon was: “I merely want a paper so as to get an abstract and to correct a mistake.”
D. Mrs. McLendon signed the deed without reading it, relying on the representations of Mrs. Fox so that Mrs. Fox could get an abstract.
These were wilful and deliberate and fraudulent misrepresentations....
We hasten to acknowledge that if our scope of review were confined to appellee’s contention for fraud of the “intent to deceive” variety, our decision to affirm would be much more difficult. Indeed, our careful reading of the record confirms appellant’s accusation that the trial evidence does not support the finding that Fox represented to McLendon “that the sole purpose of the quitclaim deed was in order to clear a technicality in Title.... ”
What the record does support, however, is misrepresentation of the “innocent” variety. Whether Fox intended to deceive McLen-don through a preconceived plan to misrepresent the true nature of the “paper” which she requested her cousin to sign is not the issue before us. Even if a reasonable view of the preponderance of the evidence precludes a finding of evil intent or design on the part of Fox, there is ample evidence to support the ultimate holding, setting aside the deed on the ground of misrepresentation, though innocently made.
Fox may have had every reason to believe when she received the deed from McLendon’s mother in 1970 that she was the sole owner of the property; but when *1114 she requested McLendon to sign the quitclaim deed so she could sell the property in 1980, she was aware that McLendon was the owner of a one-half interest. Fox admitted that it was clear from what McLen-don told her on December 23rd that, if she had known that she owned an interest in the property, she would not have signed the deed. Fox also assured McLendon that if “anything comes of the place, you won’t lose out."
The evidence supports the trial court’s finding that McLendon relied on Fox’s representation that she needed her to sign the “paper” so that she, Fox, could obtain an abstract in preparation for the sale of the property. At the very least, all of the elements of innocent misrepresentation are made out by this evidence. Code 1975, § 6-5-101. Edmundson v. Mullen, 215 Ala. 297, 110 So. 391 (1926).
The suppression of a material fact, which the party is under an obligation to communicate, constitutes fraud. Code 1975, § 6-5-101. Jackson Company v. Faulkner, 55 Ala.App. 354, 315 So.2d 591 (1975).
AFFIRMED.
TORBERT, C.J., and FAULKNER, AL-MON, EMBRY and ADAMS, JJ., concur.

. Suit was filed by Fannie V. Fox on February 2, 1981. After her death in November of that year, her executor, Toby Fox, was substituted as plaintiff, and subsequently filed this appeal.