[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11852
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cv-02296-WMA


WATER WORKS BOARD OF THE CITY OF BIRMINGHAM, THE,

Plaintiff - Appellant,

versus

AMBAC FINANCIAL GROUP, INC.,
AMBAC ASSURANCE CORPORATION,

Defendants - Appellees,

AMBAC ASSURANCE GROUP, INC.,

Defendant.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(August 5, 2013)

Before CARNES, Chief Judge, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

The Water Works Board of the City of Birmingham appeals the district court's dismissal of its claim against Ambac Financial Group, Inc. for failure to state a claim upon which relief can be granted.

We review de novo a court's dismissal of a complaint for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Speaker v. United States Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).

## I.

In March 2007 the Board issued water and sewer revenue bonds. To do that, it was required to establish a Reserve Fund. One of the ways the Board could satisfy the requirements for the Reserve Fund was by purchasing a surety bond from an issuer that had a credit rating of AAA. If the issuer's rating fell below AAA while the bonds were still outstanding, the Board was required to deposit into the Reserve Fund the amount of all outstanding securities or replace the original surety bond with another bond from an issuer that had a AAA rating.

The Board created the Reserve Fund by purchasing a surety bond from Ambac, which had a AAA rating at the time. In June 2008 Ambac's rating was downgraded to AA. As a result, the Board had to put cash in the Reserve Fund.

2

When that happened, the Board sued Ambac for breach of contract, fraud, suppression of truth, and negligence.

## II.

The Board first claims that Ambac breached its contract with the Board because Ambac allowed its credit rating to be downgraded. To prevail on a breach of contract action, the claimant must prove: (1) the existence of a valid contract, (2) its own performance under the contract, (3) the defendant's nonperformance, and (4) damages. Southern Medical Health Systems, Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995).

The district court dismissed the Board's breach of contract claim, reasoning that the contract between Ambac and the Board did not require that Ambac keep its AAA rating. The Board argues that the Trust Indenture, which provided the terms for the Board's issuance of the water and sewer bonds, imposed a contractual obligation on Ambac to maintain a AAA credit rating. Even if we assume that Ambac was bound by the Trust Indenture, the Board has not stated a viable claim for breach of contract. The Indenture did not require the bond issuer to keep a AAA rating. On the contrary, it explicitly acknowledged the possibility of the issuer's rating being downgraded and explained what the Board was required to do in that situation.

3

The Board argues that even if there is no express requirement, it was implied by the terms of the Indenture.  Under the Indenture, if Ambac's rating fell below AAA, the surety bond no longer satisfied the Reserve Fund Requirement, and Ambac acknowledged in the Certificate of Bond Issuance that the bond had been purchased to satisfy the Reserve Fund Requirement.  That argument is unpersuasive.  As we have explained, Ambac's downgrading was explicitly contemplated and provided for in the Trust Indenture, and the Board was given alternate ways to satisfy the Reserve Fund Requirement.  The fact that the Board was required to use a different method to meet the requirement after Ambac's credit was downgraded does not mean the Board did not get the benefit it contracted for.  By purchasing the bond from Ambac the Board was able to delay putting cash in the Reserve Fund and ensured that Ambac would pay the bondholders if the Board defaulted.  Because there was no contract—express or implied—for Ambac to maintain its AAA credit rating, the court did not err in dismissing the Board's claim.

## III.

The Board next argues that the court erred when it dismissed its claims for fraud. The Board alleges that Ambac violated Alabama law by misrepresenting its underwriting standards and its surveillance policy.  "The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly,

4

without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." Brushwitz v. Ezell, 757 So.2d 423, 429 (Ala. 2000).[1] "To establish a cause of action for fraud, a buyer must demonstrate that a seller's statements . . . were representations of fact and not mere statements of opinion amounting to nothing more than sales talk or mere puffery." Russell v. Wilson, 991 So.2d 745, 748 (Ala.Civ.App. 2008).

The Board alleges that Ambac's statements that it made careful investment choices were misrepresentations because they were made at a time when Ambac was lowering its underwriting standards. We agree with the district court that Ambac's statements were merely "puffing statements" designed to make Ambac look appealing. For example, Ambac's statement that it "remain[s] steadfast in judiciously allocating our capital to transactions that enable us to continue to deliver superior returns" is a vague promotional statement and not a factual statement about Ambac's policies. Similarly Ambac's statements that it is "very selective" and "very cautious" in choosing securities are puffery. They are not factual descriptions of Ambac's underwriting standards.

---

[1] The Board relies heavily on NPS LLC v. Ambac Assurance Corp., 706 F.Supp. 2d 162 (D. Mass 2010), which found that similar statements made by Ambac were material misrepresentations. As that decision is not binding precedent, we are not bound to follow it, and, as it does not apply Alabama law, we find it unpersuasive.

5

The Board also alleges that Ambac misrepresented its surveillance process when it stated that "[a]ctive surveillance of the insured portfolio enables Ambac's Surveillance Group to track credit migration of insured obligations." The Board does not, however, allege any facts to show that this statement was false; it merely alleges that Ambac's surveillance process was not as good as the Board believes it should have been.

The district court also correctly noted that several statements highlighted by the Board cannot be the basis for the Board's misrepresentation claim because they were made after the Board bought the surety bond so the Board could not have relied on them. See Hunt Petroleum Corp. v. State, 901 So.2d 1, 4 (Ala. 2004) ("Reliance requires that the misrepresentation actually induced the injured party to change its course of action."). The court did not err in dismissing this claim.

## IV.

The Board next argues that the court erred by dismissing its suppression of truth claim. "The elements of suppression are: (1) a duty on the defendant to disclose a material fact; (2) the defendant's concealment or nondisclosure of that fact; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury." Brushwitz, 757 So.2d at 431 (Ala. 2000). "A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but

6

mere silence in the absence of a duty to disclose is not fraudulent." Mason v.

Chrysler Corp., 653 So.2d 951, 954 (Ala. 1995).  "Even though one is under no

obligation to speak as to a matter, if he undertakes to do so . . . he is bound not

only to state truly what he tells, but also not to suppress or conceal any facts within

his knowledge which will materially qualify those stated." Jackson Co. v.

Faulkner, 315 So.2d 591, 600 (Ala.Civ.App. 1975).

The Board bases its claim of suppression of truth on the fact that Ambac

made statements about how selective and cautious it was in investing without

disclosing that it had lowered its underwriting standards and without explaining its

surveillance policy.  Ambac's general statements that it was "selective" or that it

was engaging in "active surveillance," however, do not give rise to a duty to

disclose its underwriting standards or surveillance policies.  The court did not err

in dismissing this claim.

## V.

Finally, the Board argues that the court erred when it dismissed its

negligence claim, arguing that even if there was no express or implied agreement

that Ambac would maintain its AAA rating, Ambac had a duty not to negligently

lose its AAA rating.

The Alabama Supreme Court has held that, "if in performing [a contractual

duty], it is alleged that the defendant negligently caused personal injury or property

7

damage to plaintiff, the remedy is in tort, for it is not the breach of a contract express or implied, but the breach of an implied duty to exercise due care not to injure plaintiff or her property which is the gravamen of the action." Vines v. Crescent Transit Co., 85 So.2d 436, 440 (Ala. 1956).

Here, the Board argues that Ambac's negligence caused it to lose its AAA rating. Alabama law does not impose a duty on Ambac to retain that rating; the only possible source for that duty would be in the contract between the Board and Ambac, making the Board's claim one sounding in contract law. See Vines, 85 So.2d at 440 ("[A] negligent failure to perform a contract express or implied . . . is but a breach of the contract."). The court did not err in dismissing this claim.

**AFFIRMED.**