[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 485 
Erin Murphy (buyer) filed a complaint, alleging that James Danley and James Jackson (sellers) made fraudulent representations which induced her to purchase a defective automobile and that she was damaged thereby.
The sellers filed an answer, denying all material allegations. Thereafter, the sellers filed a motion for summary judgment, which was denied.
The case was tried before a jury. The jury returned a verdict in favor of the buyer and awarded $10,400 in compensatory damages and $3,000 in punitive damages. The trial court entered a judgment based upon the jury's verdict.
The sellers filed a motion for judgment notwithstanding the verdict and a motion for a new trial. Both of these post-judgment motions were denied by the trial court.
The sellers appeal. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
At the outset we would note that it is well settled that a presumption of correctness attaches to a jury verdict and that a judgment based upon a jury verdict will be reversed only if it appears to be plainly and palpably wrong. Brannon v.Webster, 562 So.2d 1337 (Ala.Civ.App. 1990). Such a presumption of correctness is strengthened by the denial of a motion for a new trial. Brannon, 562 So.2d 1337.
Viewing the record with the attendant presumptions accorded the jury's verdict in this case, we find the following pertinent facts: In July 1992 the buyer purchased a 1988 convertible from the sellers for a total price of $7,678.13, including tax. The buyer purchased this automobile because she was making preparations to go away to school at the University of South Alabama and because she needed a safe, reliable automobile for transportation. The buyer's father, Walter Murphy, negotiated the purchase of this automobile on his daughter's behalf. Murphy testified that he advised the sellers as to the reason that his daughter desired to purchase an automobile and that he was assured by the sellers that the automobile was safe and reliable. The buyer testified that her father related to her the information that the sellers gave to him regarding the automobile and that, based upon this information, she decided to buy the automobile.
In August 1992, while on a trip to the Orlando, Florida, area, the automobile's engine "blew up" and the engine had to be replaced. During the return trip to Alabama, there were problems with the automobile's transmission and transaxle.
There was testimony that it has been necessary to have the automobile towed on seven or eight occasions. Also, the buyer testified that it has been necessary to have repair work performed on the automobile on approximately ten occasions. The testimony revealed that, at the time of trial, the amount spent on repair bills for the automobile totalled approximately $3,000.
In addition to incurring bills for towing and for making the necessary repairs on the automobile, the buyer has been inconvenienced and deprived of the use of her automobile. In fact, the buyer testified that her parents will not allow her to take the automobile to school with her because it continues to have numerous defects and requires several thousand dollars worth of repairs to make it safe and reliable. It is the buyer's opinion that the automobile is worth "nothing." Murphy testified that the automobile is "worthless."
We would note that Danley owns a business which sells used automobiles. When Murphy stopped to inquire about the automobile, Danley told him that the automobile belonged to his daughter (Jackson is married to Danley's daughter) and that his daughter wished to sell it because she had small children *Page 486 
and because it was not suitable for her needs. During the course of the negotiations, the sellers told Murphy that the automobile had sustained a "lick" and that it had been "smacked" on the front end. The sellers indicated to Murphy that the automobile had received damage in the right front fender and grill area and that it had been repaired and repainted following the accident.
After the buyer began experiencing the problems with the automobile, she learned that when Jackson purchased the automobile, it was in its wrecked condition and had a salvage title, which had been issued by the state of New Jersey. In fact, the buyer discovered that the automobile had sustained significant damage to both the front end and the rear end and that it had been declared a total loss by the insurance company, which had paid approximately $10,000 in damages to the individual who owned the automobile at the time that it was declared to be a total loss.
Murphy testified that no one advised him that the automobile had been totalled, purchased as salvage, and rebuilt and that if he had been given this information, under no circumstances would he have advised his daughter to purchase the automobile. The buyer testified that she decided to purchase the automobile based upon the information that her father passed along to her and that she would not have purchased the automobile if she had known that it had been totalled, purchased as salvage, and rebuilt.
In their first issue, the sellers contend that the buyer is precluded from asserting a fraud claim against the sellers based upon the wrecked condition of the automobile because an "as is" contract was executed for the purchase of the automobile.
At the outset we note that the sellers were aware that Murphy was negotiating on behalf of his daughter, the buyer, for the purchase of the automobile. In Thomas v. Halstead,605 So.2d 1181, 1184 (Ala. 1992), our supreme court stated that "[i]n Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured," as long as the injured party is able to prove that his damages resulted from the deceit.
We recognize that, in order to prove fraud, a plaintiff must demonstrate that the defendant made a false representation which involved a material, existing fact and that the plaintiff relied upon this false representation which proximately resulted in damage to the plaintiff. International Resorts,Inc. v. Lambert, 350 So.2d 391 (Ala. 1977). In the present case the sellers argue that because they informed Murphy that the automobile had been wrecked, they made no false representations to Murphy which would support a fraud claim.
However, as noted above, the sellers indicated to Murphy that the automobile had been "smacked" in the front end. When the sellers revealed that the automobile had been wrecked, they were under an obligation to make a full and fair disclosure, without suppressing or concealing any material facts of which they had knowledge. Jackson Co. v. Faulkner, 55 Ala. App. 354,315 So.2d 591 (Ala.Civ.App. 1975). In this case the sellers made a partial disclosure, which concealed material facts. Therefore, the statements made by the sellers were only a half-truth and, thus, were a misrepresentation of the facts. When the sellers willfully concealed certain material facts, which led Murphy, and ultimately the buyer, to believe that the history of the automobile was different from what it actually was, the sellers were guilty of a fraudulent concealment.Jackson Co., 55 Ala. App. 354, 315 So.2d 591.
In view of the above, the buyer is not precluded from asserting a fraud claim in the present case.
In their second issue, the sellers contend that the jury failed to follow the jury instructions regarding the measure of compensatory damages — the difference between the fair market value of the property as represented and the fair market value of the actual condition of the automobile.
The sellers contend that there was no evidence from which the jury could have reasonably inferred that the fair market value of the automobile was $10,400. In order to determine damages, the jury may weigh the *Page 487 
evidence presented and draw inferences therefrom.Brannon, 562 So.2d 1337. Our review of the record reveals that there was testimony from which the jury could have inferred that the current fair market value of the automobile was zero. In addition, we would note that there was testimony from which the jury could have inferred that the fair market value of the automobile, if it had been as represented, was approximately $10,000.
The third issue raised by the sellers is that the trial court committed reversible error when it failed to charge the jury regarding the mitigation of damages. However, we would note that the mitigation of damages is not applicable in a case, such as the present case, where the measure of damages is the market value of the property before and after the damage.Great American Insurance Co. v. Railroad Furniture Salvage ofMobile, Inc., 276 Ala. 394, 162 So.2d 488 (1964).
In their final issue, the sellers contend that the award of punitive damages is contrary to law. It is within the jury's discretion to impose punitive damages in cases involving misrepresentation. Huntsville Dodge, Inc. v. Furnas,361 So.2d 585 (Ala.Civ.App. 1978). In order to determine whether an award of punitive damages is justified, one must look to the facts of each case to ascertain whether the misrepresentation in a particular case was blatant, malicious, and oppressive and was accomplished with the intent to deceive. Huntsville Dodge,361 So.2d 585.
In the present case the sellers failed to advise Murphy or the buyer that the automobile had been totalled, bought as salvage, and extensively repaired and rebuilt. In fact, the sellers led Murphy to believe that the automobile had received some slight damage when it was "smacked" on the front end and that the car had been repaired and repainted after the accident. Consequently, the evidence and the inferences therefrom support the jury's award of punitive damages in this case.
The judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.