Lenise Brown appeals from a summary judgment in favor of K V Automotive, Inc. ("K V"), on her claims alleging fraud, breach of contract, and unlawful trade practices arising from her purchase of a "used" 1996 Ford Escort automobile ("the vehicle") from K V.
In September 2003, K V filed in the Montgomery District Court ("the district court") a complaint against Brown alleging that Brown had breached a contract made between the parties on January 25, 2002, pursuant to which Brown had purchased the vehicle from K V. K V attached a copy of the contract to its complaint. In its complaint, K V alleged that Brown had defaulted on her payments for the purchase of the vehicle and that she owed K V $8,703.73, plus a reasonable attorney fee and court costs. K V also sought to recover the vehicle. Brown answered and counterclaimed, alleging fraud, misrepresentation, breach of contract, breach of warranty, and unlawful trade practices.
On December 22, 2003, the district court entered a judgment in favor of K V in the amount of $8,363.71, plus court costs, and dismissed Brown's counterclaim without prejudice. Brown timely appealed the district court's judgment to the Montgomery Circuit Court ("the trial court").
Brown filed in the trial court a pleading entitled "counterclaim," in which she asserted the same claims that she had asserted in her counterclaim before the district court. K V answered, asserting numerous defenses. Thereafter, K V filed a motion for a summary judgment. Brown opposed K Vs summary-judgment motion, and the trial court heard oral arguments on that motion on June 1, 2005.
On June 8, 2005, the trial court entered a partial summary judgment in favor of K V as to the claims asserted in Brown's counterclaim. However, because that order did not adjudicate all of the claims between the parties, it was a nonfinal judgment. Wright v. Wright, 882 So.2d 361,363 (Ala.Civ.App. 2003). On October 4, 2005, the trial court entered an amended order to include a "[j]udgment . . . for [K V] in the amount of $8,363.71 as ordered by the [district [c]ourt." Thus, the trial court's October 4, 2005, amended order adjudicated all of the claims between the parties and was a final judgment. Wright v. Wright, supra. Brown appealed.
This court reviews a summary judgment de novo. Ex parteBallew, 771 So.2d 1040 (Ala. 2000).
 "A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). `When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact.' Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999). `[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmoving party and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. *Page 461 Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)."
Bain v. Gray, 835 So.2d 1034, 1037 (Ala.Civ.App. 2002). "[E]ven though there may be no genuine issues of material facts between the parties, `[a] motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions.'" Taylor v. Waters, 477 So.2d 441, 444
(Ala.Civ.App. 1985) (quoting Lundy v. Hazen,90 Idaho 323, 326, 411 P.2d 768, 770 (1966)).
Based on the evidentiary submissions of the parties, the record reveals the following relevant facts. As previously stated, on January 25, 2002, the parties entered into a contract pursuant to which Brown purchased the vehicle from K V. At the time of the sale, Brown signed a number of documents. Copies of those documents are included in the record on appeal.
The record also contains an affidavit by Kip Cruce, a K V salesman, and an affidavit by Brown. Cruce's affidavit states, in relevant part:
 "2. Ms. Brown purchased a 1996 Ford Escort from K V Automotive on January 25, 2002. The car in question was a used vehicle. K V had purchased the vehicle from a salvage auction, rebuilt it and had it certified with the State. The State further, as required by law, placed a sticker on the vehicle that says this is a salvage vehicle. I disclosed to Ms. Brown all of the major repairs done on the vehicle prior to the purchase. Further, the sticker on the vehicle indicated it was previously a salvage vehicle. I never made any representation that the vehicle had never been involved in an accident.
 "3. Ms. Brown requested a repair on the car on April 12, 2002 — well after the first week of purchase as indicated in the Counter[claim]. The first repair was to replace the brake pads — it was after Ms. Brown put 7,000 miles on the car. Based on my experience, this is normal to replace the brakes after that amount of mileage was placed on the car. At the time of the purchase of the vehicle, Ms. Brown executed the following documents:
 [List of documents that Brown signed at the time she purchased the vehicle; the documents were attached to Cruce's affidavit.]
 "4. Contained in those documents were clear `as is' provisions acknowledging that the purchase of the vehicle was in an `as is' condition. The most relevant provisions of the written contracts were as follows:
 "[(1)]
 "`SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED INCLUDING ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SELLER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN THE CONNECTION WITH THE SALE OF THE VEHICLE.
 "`NOTICE OF VEHICLE SOLD WITHOUT ANY WARRANTY
 "`THIS VEHICLE IS SOLD AS IS, WHERE IS AND WITHOUT ANY WARRANTY. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST AND/OR MAY OCCUR IN THE VEHICLE UNLESS THE SALESPERSON PROMISES IN WRITING AT THE TIME OF THE SALE TO CORRECT SUCH DEFECTS.' *Page 462 
 "[quoted from] WARRANTY DISCLAIMER-SOLD AS IS
 "[(2)]
 "`I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT THE DEALER HAS DISCLOSED TO ME BEFORE I AGREED TO PURCHASE SAID VEHICLE, THAT IT IS POSSIBLE THAT SAID VEHICLE HAS SUSTAINED PAINT AND BODY WORK. THE EXTENT OF ANY PAINT AND BODY WORK, IF PERFORMED ON THIS VEHICLE IS UNKNOWN AND WAS PERFORMED PRIOR TO BEING PURCHASED BY OR TRADED-IN TO K V AUTOMOTIVE, INC.
 "`I FURTHER ACKNOWLEDGE THAT SAID DAMAGE, IF ANY, HAS BEEN REPAIRED TO MY SATISFACTION, AND THAT NO ORAL REPRESENTATIONS WERE RELIED ON BY ME IN MAKING MY DECISION TO PURCHASE THIS VEHICLE.'
 "[quoted from] DISCLOSURE OF POSSIBLE DAMAGE
 "[(3)]
 "`AS IS — NO WARRANTY
 "`YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.
 "`[handwritten:] 30 days warranty on Engine, Transmission and Drive Train.'
 "[quoted from] BUYER'S GUIDE
 "[(4)]
 "`I HAVE MADE MY OWN INDEPENDENT DECISIONS BUY THIS VEHICLE AND MY DECISION TO BUY WAS NOT INFLUENCED BY ANY REPRESENTATIONS MADE BY THE SALES PERSON AS TO THE MECHANICAL OR BODY CONDITION OF THE VEHICLE.
 "`I fully understand that only representations in writing made by K V Automotive Inc. should be relied on by me in making my decision to buy.
 "`My decision to buy is based on my acceptance of the condition of the vehicle and all terms of the purchase.
 "`ABSOLUTELY NO ORAL REPRESENTATION WAS RELIED ON BY ME IN MAKING MY DECISION TO BUY, INCLUDING ORAL STATEMENTS ABOUT MECHANICAL CONDITION OR THE BODY CONDITION OF THE VEHICLE.'
 "[quoted from] DECISION TO BUY."
(Capitalization appears in the original documents quoted in the affidavit.)
In her affidavit, Brown stated, in relevant part:
 "I purchased a 1996 Green Ford Escort vehicle on or about January 25, 2002, from K V Automotive. I dealt mostly with Kip Cruce when purchasing the car. I specifically asked Mr. Cruce if the car had ever been wrecked and he said `no.' I was to pay $250 per month for a total of twenty-four months for the car. I paid a down payment of $1,300 and K V Automotive financed the remainder at 22% interest. Shortly after the purchase of the car, the vehicle started to have mechanical problems. I took the vehicle back to K V for repairs. In October 2002, I had to have the entire engine replaced at a cost of $1,167.88. I also had to have the steering column, power steering belt, airflow sensor and speedometer cable sensor on the transmission replaced in January 2003 at a cost of $429.98. *Page 463 
 "Soon after the repairs in January 2003, I took the car to Robert Todd, ray mechanic. Mr. Todd told me that the little sticker in the door meant that the vehicle was a salvage. This was the first time I had any knowledge that K V Automotive had defrauded me into buying a vehicle with a salvage title. At no time did Kip Cruce or anyone from K V automotive ever tell me that the car had a salvage title."
The record also contains two documents that were executed at times other than at the time of the sale of the vehicle. The record contains an "Alabama Department of Revenue, Automobile Inspection Unit, Investigation Division" application entitled "Application for Inspection of a Salvage Vehicle and Affirmation Supporting Salvage Certificate"; that application is signed by Bobby Cruce,[1] on behalf of K V, and dated October 19, 2000. Consistent with Kip Cruce's affidavit, the application indicates that K V purchased the vehicle at a salvage sale, rebuilt it, and had it "certified."
That application states in part:
 "Applicant hereby makes application for inspection of the . . . vehicle which has been completely restored by applicant in this state (Alabama) to its operating condition which existed prior to the event which caused the attached certificate of title, permit to dismantle, total loss certificate, or similar type certificate to issue.[2] . . .
 ". . . .
 "APPLICANT FURTHER STATES THAT THE FOLLOWING WAS DONE TO RESTORE SAID VEHICLE TO ITS OPERATING CONDITION WHICH EXISTED PRIOR TO THE EVENT WHICH CAUSED THE ATTACHED SALVAGE CERTIFICATE OF TITLE, PERMIT TO DISMANTLE, TOTAL LOSS CERTIFICATE OR SIMILAR TYPE CERTIFICATE TO ISSUE: (PAINTING, REPLACED GLASS, ETC.) [The following is handwritten:] Replaced Hood, Left Fender, Left Head-light, Marker Light 
Signal Grille Front Bumper Air Bags Painted All Over."
The record also contains a copy of the title to the vehicle that was issued by the Alabama Department of Revenue approximately one month after the sale was completed; that title, dated February 21, 2002, states that the vehicle was "REBUILT" and lists Brown as the purchaser and K V as the lienholder. Although K V argues that Brown received that title, there is no evidence in the record indicating that Brown received the original title or a copy of that title.See § 32-8-41, Ala. Code 1975 (providing that "[t]he certificate of title shall be mailed to the first lienholder named in it or, if none, to the owner").
Brown appeals, raising issues only as to her claims against K V alleging fraud, breach of contract, and unlawful trade practices.[3] Brown contends that the *Page 464 
trial court erred in entering a summary judgment in favor of K V as to each of those claims. Brown first contends that the trial court erred in entering a summary judgment in favor of K V as to her fraud claims because, she says, she presented substantial evidence that reasonably supports an inference that K V defrauded her.
A fraud claim may involve an alleged affirmative misrepresentation of a material fact or an alleged concealment of a material fact for which there is a duty to disclose. Section 6-5-101, Ala. Code 1975, which addresses fraud by misrepresentation, provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud." In Baker v. Metropolitan LifeInsurance Co., 907 So.2d 419, 420-21 (Ala. 2005), our supreme court stated:
 "`[I]n order to recover for fraud, [Brown] must establish (1) that [K V] made a false representation, (2) that the misrepresentation involved a material fact, (3) that [Brown] relied on the misrepresentation, and (4) that the misrepresentation damaged [Brown].' Liberty National Life Ins. Co. v. Ingram, 887 So.2d 222
(Ala. 2004). In addressing in Ingram the nature of the reliance required to support a fraud claim, we quoted Foremost Insurance Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997):
 "`[W]e conclude that the "justifiable reliance" standard adopted in Hickox [v. Stover, 551 So.2d 259 (Ala. 1989)], which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the "reasonable reliance" standard most closely associated with Torres v. State Farm Fire Casualty Co., 438 So.2d 757 (Ala. 1983). The "reasonable reliance" standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties.'
 "Therefore, in order to satisfy the reliance element of [her] fraud claim [Brown] must show not only that [she] relied on [K V's] alleged misrepresentation . . ., but also that the reliance was reasonable in light of the facts surrounding transaction in question. See also Brushwitz v. Ezell, 757 So.2d 423, 429
(Ala. 2000) (The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.' (emphasis added))."
Section 6-5-102, Ala. Code 1975, which addresses fraud by omission, provides that "[suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Recently, *Page 465 
in Freightliner, LLC. v. Whatley Contract Carriers,LLC, 932 So.2d 883, 891 (Ala. 2005), our supreme court stated:
 "The elements of a suppression claim are `(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.' Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala. 1996)."
In Beiersdoerfer v. Hilb, Rogal Hamilton Co., [Ms. 1012243, Jan. 7, 2005],* our supreme court stated:
 "`A duty to disclose may arise from the particular circumstances of the case. See Ala. Code 1975, § 6-5-102. Those circumstances include "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." State Farm Fire Cas. Co. v. Owen, 729 So.2d 834, 842-13
(Ala. 1998).'
 "Bethel v. Thorn, 757 So.2d 1154, 1162
(Ala. 1999)."
Brown argues that K V had a duty to disclose that the vehicle was a salvage vehicle in the manner set forth in §32-8-87(p), Ala. Code 1975, and that K V concealed that material fact. Brown also argues that K V, by representing that the vehicle was a used vehicle as opposed to a salvage vehicle, misrepresented a material fact as to the type of automobile she was purchasing. Brown further argues that, as a result of her specific inquiry into the matter, K V had a duty to disclose that the vehicle had been wrecked. Brown argues that had she known the vehicle was a salvage vehicle, she would not have purchased the vehicle. She argues that she was damaged because a salvage vehicle is worth less than a used vehicle; she asserts that the vehicle is now essentially worthless.
Section 32-8-87 is part of the Alabama Uniform Certificate of Title and Antitheft Act, § 32-8-1 et seq., Ala. Code 1975 ("the Act"). The Act was originally enacted in 1973,see Act No. 765, Ala. Acts 1975, and has been amended from time to time. In Congress Finance Corp. v.Funderburk, 416 So.2d 1059, 1061 (Ala.Civ.App. 1982), this court stated:
 "The Alabama legislature enacted the Uniform Certificate of Title and Antitheft Act in 1973. §§ 32-8-1 to -87, Code of Alabama 1975. One purpose of the act is to frustrate the possession and disposition of stolen motor vehicles in the state. State v. Spurlock, 393 So.2d 1052
(Ala.Cr.App. 1981). The act also provides a means for interested parties to ascertain essential information concerning title to vehicles. See Nationwide Insurance Co. v. Bank of Forest, Forest, Mississippi, 368 So.2d 1273 (Miss. 1979)."
(Emphasis added.)
In 1995, the legislature amended the Act, see
Act No. 95-406, Ala. Acts 1995; that amendment, among other things, added subsection (p) to § 32-8-87. Before the 1995 amendment, the Act did not contain a provision that contains the substance of § 32-8-87(p). Section 32-8-87(p) provides: *Page 466 
 "Each person who sells, exchanges, delivers, or otherwise transfers any interest in any vehicle for which a title bearing the designation `salvage' or `rebuilt' has been issued shall disclose in writing the existence of this title to the prospective purchaser, recipient in exchange, recipient by donation, or recipient by other act of transfer. The disclosure, which shall be made at the time of or prior to the completion of the sale, exchange, donation, or other act of transfer, shall contain the following information in no smaller than 10 point type: `This vehicle's title contains the designation "salvage" or "rebuilt".'"
Regarding the rules of statutory construction, this court has stated:
 "In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'
 "Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992))."
W.L.S. v. K.S.S.V., 810 So.2d 777, 779
(Ala.Civ.App. 2001); see also Ex parte Prudential Ins. Co. ofAmerica, 721 So.2d 1135, 1138 (Ala. 1998) ("The word `shall' is clear and unambiguous and is imperative and mandatory.").
In the present case, it is undisputed that "at the time of or prior to the completion of the sale," see §32-8-87(p), K V did not disclose to Brown that the vehicle was a salvage vehicle in the manner set forth in §32-8-87(p). Although at the time of the sale Brown signed documents stating that she did not rely on any oral representations made by K V in making her decision to purchase the vehicle, those same documents stated that Brown could rely on the written representations made by K V. We hold that pursuant to § 32-8-87(p), at or before the completion of the sale, K V had a duty to disclose to Brown in writing "in no smaller than 10 point type [that] `This vehicle's title contains the designation "salvage" or "rebuilt".'" Id.; see also Trail-mobile, Inc. v. Cook,540 So.2d 683 (Ala. 1988) (indicating that the Act established a standard of conduct for persons or corporations who come within its terms and created a duty for such persons or corporations to comply with the Act; such obligation is written into contracts by operation of the Act). The fact that Brown signed a number of documents indicating that she was purchasing the vehicle "as is" did not relieve K V of its obligation to disclose to her that the vehicle was a salvage vehicle in accordance with §32-8-87(p). See Danley v. Murphy, 658 So.2d 483
(Ala.Civ.App. 1994) (recognizing that, in certain circumstances, a fraud claim is not necessarily precluded by an "as is" purchase contract for the sale of a used automobile that had a salvage title).[4] We *Page 467 
note that Danley v. Murphy, supra, was decided before § 32-8-87 was amended to include subsection (p); thus, a seller now has a statutory duty to disclose that a vehicle is a salvage vehicle in the manner set forth in § 32-8-87(p). In the present case, it is undisputed that K V failed to do so. Further, the record does not contain any evidence indicating that, at the time she purchased the vehicle, Brown was made aware of the sticker that had been placed on the inside of one of the doors of the vehicle indicating that the vehicle was a salvage vehicle. See § 32-8-87(o)(1), Ala. Code 1975.[5] Thus, we find that the evidence could support the conclusion that K V suppressed a material fact for which it had a duty to disclose pursuant to § 32-8-87(p).See § 6-5-12, supra, and Lambert v. MailHandlers Benefit Plan, supra (the first two elements of a suppression claim are the concealment or nondisclosure of a material fact that a party is under a duty to disclosure). A fact issue exists as to whether Brown was induced to act based on that omission in deciding to buy the vehicle. Seeid. (inducement to act based on suppression of a material fact is also an element of a suppression claim). Accordingly, we reverse the judgment of the trial court as to Brown's suppression claim.
In addition, when K V sold the vehicle as a used vehicle as opposed to a salvage vehicle, K V made a representation regarding the condition of the vehicle. In substance, the written representations indicated that the vehicle was a "typical" used vehicle instead of a used vehicle that was also a "salvage" vehicle. Thus, we conclude that there is substantial evidence indicating that K V made an affirmative misrepresentation of a material fact that could be the basis of a fraud claim. See Foremost Ins. Co. v.Parham, supra (the first two elements of a misrepresentation claim are a false representation of a material fact). A fact issue exists as to whether Brown could have reasonably relied upon that misrepresentation in deciding to buy the vehicle. See id. (reasonable reliance on a false representation of a material fact is another element of a misrepresentation claim). Accordingly, we reverse the judgment of the trial court as to Brown's misrepresentation claim. *Page 468 
Next, Brown contends that the trial court erred in entering a summary judgment in favor of K V as to her breach-of-contract claim. Brown argues, in essence, that a genuine issue of material fact exists as to whether K V breached the contract by selling her a salvage vehicle when the contract described a vehicle as "used" or "as is."
In Ex parte Coleman, 861 So.2d 1080, 1085 (Ala. 2003), our supreme court stated:
 "To establish a breach-of-contract claim, a plaintiff must show `"(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages."' State Farm Fire Cas. Co. v. Slade, 747 So.2d 293, 303
(quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) (citations omitted))."
Accord, Shelton v. Clements, 834 So.2d 775, 782
(Ala.Civ.App. 2002). We hold that a genuine issue of material fact exists as to whether the purchase contract for the sale of the vehicle that describes the vehicle as "used" or "as is" sufficiently described or encompassed the vehicle that K V had a duty to disclose was a salvage vehicle in accordance with § 32-8-87(p). Accordingly, we reverse the judgment of the trial court as to Brown's breach-of-contract claim.
Lastly, Brown contends that the trial court erred in entering a summary judgment in favor of K V on her claim regarding alleged violations of § 8-19-5, Ala. Code 1975, which addresses unlawful trade practices. The portions of §8-19-5 to which Brown refers this court are as follows:
 "(2) Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.
 ". . . .
 "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have. . . .
 "(6) Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, provided that this subdivision shall not apply to new goods which have been reconditioned, reclaimed, or repaired and such fact is disclosed to the purchaser.
 "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
 ". . . .
 "(13) Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service."
Brown makes substantially the same factual allegations and legal arguments regarding her unlawful-trade-practices claim as she did for her fraud claims and her breach-of-contract claim. In addition, Brown points out that some of the statements made by K V in its "Application for Inspection of a Salvage Vehicle and Affirmation Supporting Salvage Certificate," which was executed over a year and a half before the sale of the vehicle, are contradictory to the statements made by K V in its "DISCLOSURE OF POSSIBLE DAMAGE" document, quoted in Kip Cruce's affidavit and executed at the time of the sale. In the former document, K V made written representations regarding the specific paint and body work it had *Page 469 
performed on the "salvage" vehicle, and in the latter document K V made written representations to the effect that it had not performed any paint and body work on the vehicle. We hold that the record contains substantial evidence indicating that K V made representations to Brown regarding the character and quality of the vehicle that could be the basis of an unlawful-trade-practices claim. In so holding, we note that facts relating to Brown's fraud claims and breach-of-contract claims are relevant to Brown's unlawful-trade-practices claim as well. Accordingly, we reverse the judgment of the trial court as to Brown's unlawful-trade-practices claim.
In conclusion, the summary judgment is reversed as to Brown's claims alleging fraud, breach of contract, and unlawful trade practices. This cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and BRYAN, J., concur.
PITTMAN and MURDOCK, JJ., concur in the result, without writing.
[1] The record is silent as to whether "Kip Cruce" and "Bobby Cruce" are the same person.
[2] The record does not include any such attachments to the application.
[3] On appeal, Brown has failed to make any arguments regarding that portion of the trial court's judgment affirming the district court's judgment in favor of K V in the amount of $8,363.71 on K V's breach-of-contract claim. Brown also has failed to make any arguments regarding her breach-of-warranty claim to this court. Therefore, any issues as to those claims have been waived. "When an appellant fails to argue an issue in [her] brief, that issue is waived."Boshell v. Keith, 418 So.2d89, 92 (Ala. 1982).
We also note that Brown argues for the first time on appeal in her reply brief that the purchase contract or "waiver" provisions/documents were voidable or void. Because Brown did not make those arguments in her initial brief to this court, we "will simply treat such issues as not before the Court."Kennesaw Life Ace. Ins. Co. v. Old Natl Ins. Co.,291 Ala. 752, 754, 287 So.2d 869, 871 (1973).
* Note from the reporter of decisions: On September 22, 2006, on application for rehearing, the Alabama Supreme Court withdrew its January 7, 2005, opinion and substituted another opinion. The material quoted below appears in the substituted September 22, 2006, opinion. See Beiersdoerfer v. Hilb,Rogal Hamilton Co., [Ms. 1012243, September 22, 2006] ___ So. 2d ___ ___, (Ala. 2006).
[4] In Danley v. Murphy, this court held that the sellers in that case had a duty to disclose the extent of the damage to an automobile that had a salvage title when, during the course of negotiations, the sellers indicated to the purchaser's father, who negotiated the purchase of the automobile on his daughter's behalf, that the automobile had received some damage to the right fender and grill area but failed to disclose that the automobile had actually sustained significant damage to both the front end and the rear end and had been declared a total loss by the insurance company.658 So.2d at 486. In so holding, this court stated:
 "[T]he sellers indicated to [the purchaser's father] that the automobile had been `smacked' in the front end. When the sellers revealed that the automobile had been wrecked, they were under an obligation to make a full and fair disclosure, without suppressing or concealing any material facts of which they had knowledge. Jackson Co. v. Faulkner, 55 Ala.App. 354, 315 So.2d 591 (Ala.Civ.App. 1975). In this case the sellers made a partial disclosure, which concealed material facts. Therefore, the statements made by the sellers were only a half-truth and, thus, were a misrepresentation of the facts. When the sellers willfully concealed certain material facts, which led Murphy, and ultimately the buyer, to believe that the history of the automobile was different from what it actually was, the sellers were guilty of a fraudulent concealment. Jackson Co., 55 Ala.App. 354, 315 So.2d 591."
658 So.2d at 486.
[5] Subsection (o) was also added to § 32-8-87 as part of the 1995 amendment to the Act. Section 32-8-87(o)(1) provides:
 "Each salvage vehicle restored or rebuilt in this state which is required to be inspected by the department [of revenue] pursuant to subsection (l) and for which a certificate of title may be issued pursuant to subsection (n) shall be issued a decal, plate, or other emblem as prescribed by the department [of revenue] to reflect that the vehicle is rebuilt. The decal, plate, or other emblem shall be attached to the vehicle in a place and in a manner prescribed by the department [of revenue]."